THE STATE OF SOUTH CAROLINA
In the Supreme Court

RECEIVED
Sep 19 2023
S.C. SUPREME COURT

APPEAL FROM RICHLAND COUNTY
Court of Common Pleas

Honorable Jocelyn Newman, Circuit Court Judge

Appellate Case No. 2022-001280

Case No. 2021-CP-40-02306

FREDDIE EUGENE OWENS, BRAD KEITH SIGMON, GARY DUBOSE TERRY, and RICHARD BERNARD MOORE, ..........................Respondents-Appellants,

v.

BRYAN P. STIRLING, in his official capacity as the Director of the South Carolina Department of Corrections; SOUTH CAROLINA DEPARTMENT OF CORRECTIONS; and HENRY MCMASTER, in his official capacity as Governor of the State of South Carolina,............................................................Appellants-Respondents.

AFFIDAVIT OF BRYAN P. STIRLING

PERSONALLY APPEARED BEFORE ME, BRYAN P. STIRLING, who having first been duly sworn, deposes and states as follows:

1. I am over the age of eighteen, of sound mind, and competent to give this testimony.

2. I served as the Interim Director of the South Carolina Department of Corrections ("Department") between October 1, 2013, until I was confirmed by the Senate as the Director on February 19, 2014. I have served as the Director of the Department since my confirmation.

3. During my tenure as the Director, the Department has been consistently and diligently attempting to obtain drugs for carrying out executions by lethal injection. Such measures have included efforts to obtain lethal injection drugs from manufacturers, compounding pharmacies, and other States' departments of corrections and to educate the General Assembly that a shield statute was needed for the Department to potentially be able to obtain lethal injection drugs. Until recently, these efforts have been universally unsuccessful. Part of what has made these efforts unsuccessful are the repeated attempts by anti-death penalty advocates to lobby manufacturers and sellers of these drugs not to provide the drugs for use in executions and to oppose enactment of a shield statute. I therefore have previously certified to this Court under S.C. Code Ann. § 24-3-530(B) that the Department did not have in its possession the drugs necessary for lethal injection to be an available method for carrying out executions after certain notices of execution had been issued.

4. While S. 120 ("Shield Statute") was progressing through the General Assembly, the Department continued asking potential providers if they would supply drugs to the Department for carrying out executions by lethal injection if S. 120 became law. The Department determined that there were suppliers which may be willing to provide drugs to the Department for carrying out executions by lethal injection if S. 120 were signed into law.

5. On May 12, 2023, the Governor signed into law the Shield Statute, *see* 2023 S.C. Acts No. 16, which "applies to persons sentenced to death as provided by law prior to and after the effective date of this act," *id.* § 3.

6. With the benefit of the Shield Statute, the Department continued its efforts to obtain lethal injection drugs. Since the Shield Statute went into effect, the Department has made more than 1,300 contacts in search of lethal injection drugs, including manufacturers, suppliers, compounding pharmacies, other States' departments of corrections, and potential sources that the Department learned about from the relationships that Department employees have with other individuals in penological institutions. The Department inquired about obtaining drugs that had been used in lethal injections in South Carolina and other jurisdictions that had withstood judicial challenges. Many of these contacts immediately refused to entertain the idea of selling lethal injection drugs to the Department, and many other contacts never responded to the Department's inquiries. Some contacts were willing to discuss selling lethal injection drugs to the Department, but for various reasons, they ultimately were unwilling or unable to supply lethal injection drugs to the Department.

7. As a result of these efforts and the Shield Statute, the Department was eventually able to secure pentobarbital for carrying out an execution by lethal injection of a one-drug protocol.

8. The Department's lethal injection policy has been revised to provide for the use of one-drug protocol. This new protocol is essentially identical to the protocol used by the Federal Bureau of Prisons and at least six other States. The Department's lethal injection policy was revised based on discussions with medical professionals and corrections officials with experience carrying out executions; the knowledge that the federal government and other States have successfully used pentobarbital to carry out executions by lethal injection; the fact that courts have upheld the use of this drug against constitutional challenges; and the Department's ability to obtain pentobarbital.

9. All three statutorily authorized methods of execution—lethal injection, electrocution, and the firing squad—are currently available for carrying out a death sentence, so a condemned inmate may elect any of these methods. *See* S.C. Code Ann. § 24-3-530.

10. I declare under penalty of perjury that the foregoing is true and correct.

FURTHER AFFIANT SAYETH NOT.

_____
Bryan P. Stirling

SWORN TO AND SUBSCRIBED BEFORE ME
THIS 17th DAY OF September, 2023

_____ (SEAL)
NOTARY PUBLIC FOR S.C.
COMMISSION EXPIRES: 3/12/2024

2